**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JON FEINGERSH | ) | |
| PHOTOGRAPHY, Inc. | ) | Civil Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PEARSON EDUCATION, INC., | ) | |
| And CORBIS CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**COMPLAINT**
(Jury Trial Demanded)
_____

Plaintiff Jon Feingersh Photography, Inc. ("JFPI") for its Complaint against Defendants

Pearson Education, Inc. ("Pearson"), and Corbis Corporation ("Corbis") alleges:

**STATEMENT OF ACTION**

1.       This is an action for copyright infringement brought by JFPI, the holder of all

copyrights to the photographs described hereafter and originally licensed for limited use by

Pearson, against Defendants for uses of Plaintiff's photographs without its authority or

permission.

**PARTIES**

2.       Jon Feingersh is the president and sole owner of Jon Feingersh Photography, Inc.,

a corporation duly organized under the laws of Maryland with its principal place of business in

Potomac, Maryland.  JFPI is a stock photography agency that licenses photographs including the

in-suit images for distribution throughout the United States, including Pennsylvania.

3.       Pearson is a Delaware corporation with its principal place of business located in Upper Saddle River, New Jersey.  Pearson is a publisher of educational textbooks.  Pearson sells and distributes its publications via its employees and agents in Pennsylvania and throughout the United States, including publications that are at issue in this action, in which Plaintiff's photographs are unlawfully reproduced.  At all times pertinent to the allegations herein, Pearson acted through its various imprints and divisions, as identified in Exhibit 1.

4.       Corbis Corporation ("Corbis"), a Nevada corporation headquartered in Seattle, Washington, licenses photographs on behalf of itself and photographers it represents.  Corbis maintains a website where users can search for images from Corbis's image library and then pay to license the images for personal or commercial use.  Corbis obtains images by entering into representation agreements with photographers and institutions.  Typically, the photographers and institutions from whom Corbis obtains images retain copyright ownership over the images and license Corbis to distribute sublicenses on their behalf.  The images in Corbis's collection are the subject of copyright protection.

## JURISDICTION

5.       This is an action for injunctive relief, monetary damages and interest under the copyright laws of the United States.  This Court has jurisdiction over the subject matter of this action pursuant to 28 United States Code §§ 1331 (federal question) and 1338 (copyright).

## VENUE

6.       Venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(a) and (b) and 28 U.S.C. §§ 1400(a).

## FACTS COMMON TO ALL COUNTS

7.     JFPI is the owner and exclusive copyright holder of the attached photographic images ("Photographs") depicted in Exhibit 1 which are either the subject of a valid copyright certificate issued by the United States Copyright Office, or pending registration, as set forth in that Exhibit.

8.     JFPI delivered the completed application, deposit, and fee for the Photograph identified as "Pearl in Oyster," Image ID MI-054-0114 to the United States Copyright Office on August 4, 2011.   The Copyright Office has not yet issued a registration number for this registration.

9.     JFPI authorized The Stock Market Photo Agency of New York, Inc. ("TSM"), a stock photo licensing agency, to issue limited licenses for use of its images by third parties, in exchange for reasonable license fees.  A true and correct copy of the agreement between JFPI and TSM ("TSM Agreement") is attached hereto as Exhibit 2, and incorporated herein.

10.     JFPI also authorized Zefa, another stock photo licensing agency, to issue limited licenses for use of its images by third parties, in exchange for reasonable license fees.  A true and correct copy of the agreement between JFPI and Zefa ("Zefa Agreement") is attached hereto as Exhibit 3, and incorporated herein.

11.     Though JFPI authorized third parties to issue licenses for limited use of the Photographs, JFPI at all times retained ownership of the copyrights and complete legal title in the Photographs.

12.     After JFPI entered into licensing agreements with TSM and Zefa, Corbis acquired TSM (in 2000) and Zefa (in 2005), along with the right to license JFPI's images, and continued to license JFPI's images for limited use to Pearson, described in Exhibit 1, until the contracts

between JFPI and those entities expired.  In acquiring TSM and Zefa, Corbis assumed all of those entities' contractual rights and obligations.

*Copyright Infringement*

13.     Upon information and belief, between 1995 and 2009 and in response to permission requests from Pearson, TSM, Zefa, and Corbis sold Pearson limited licenses to use copies of the Photographs in numerous educational publications.  *See* Exhibit 1.

14.     At the time Pearson represented to these agencies in its permission requests that it needed specified, limited licenses to use the Photographs, Pearson often knew its actual uses under the licenses would exceed the usage rights it was requesting and paying for.

15.     Pearson intended by its misrepresentations to obtain access to the Photographs at a lower cost than it would have paid had it been honest in its dealings and to conceal the copyright infringements that followed.  Pearson was successful and achieved both these wrongful ends.

16.     Upon information and belief, after licensing, Pearson used the Photographs in ways that were not permitted under the limited licenses Pearson had obtained.

17.     On November 16, 2011, JFPI, through its counsel, notified Corbis in writing that it wished to pursue legal action against Pearson for unauthorized use of its copyrighted work.

18.     Before filing this case, JFPI issued a subpoena to Corbis in a parallel litigation, requesting that Corbis produce the actual invoices it issued to Pearson for use of JFPI's photographs.  Corbis refused to do so.

19.     Before filing this case, JFPI also asked Pearson for information regarding its uses of JFPI's Photographs in connection with the Corbis, TSM, and Zefa licenses.  Pearson refused to provide the requested information.

20.     Pearson has the ability to quickly generate comprehensive automated reports showing its uses of copyrighted photographs in its publications and has done so in at least one other copyright infringement case.  Thus, if Pearson had chosen to do so, it could have responded to JFPI's request for information regarding its uses of JFPI's Photographs by generating a comprehensive report showing its uses of JFPI's Photographs in its publications, which would have allowed the parties to explore a resolution of JFPI's copyright infringement claims without litigation.  Furthermore, if Pearson had disclosed its usage of JFPI's Photographs, even if the parties had been unable to resolve JFPI's copyright infringement claims without litigation, the number of Photographs at issue in this litigation could have been reduced if Pearson had shown which, if any, of its uses were not infringing.

21.     Upon information and belief, Pearson has a general practice of infringing copyrights in its use of photographs in its publications.  While the lost licensing fee to any individual copyright holder is relatively small, Pearson has sold and distributed millions of these publications, generating billions in revenue and profits.  Pearson's business model, built on a foundation of pervasive and willful copyright infringement, has deprived numerous visual art licensors of their rightful compensation and unjustly enriched Pearson with outlandish profits in the process.

22.     Since 2009, Pearson has been sued for copyright infringement in furtherance of the scheme described herein in at least the following 20 actions:

A.     Southern District of New York: *Norbert Wu v. Pearson Education, Inc.,* No. 09-cv-06557-RJH (*Wu I*) (Wu's motion for class certification for Pearson's license violations granted September 30, 2011; Pearson's immediate appeal to the Second Circuit denied as unwarranted February 7, 2012); *Norbert Wu v. Pearson Education, Inc.,* No.

10-cv-06537-RJH (*Wu II*); *Louis Psihoyos v. Pearson Education, Inc.*, No. 10-civ-05912-JSR; and *Brandon Cole v. Pearson Education, Inc.*, No. 10-civ-07523-JFK-RLE.

B.     Eastern District of Pennsylvania: *Phil Degginger v. Pearson Education, Inc.,* No. 11-cv-01302-GKP; *Grant Heilman Photography Inc. v. Pearson Education, Inc.,* No. 5:11-cv-04649-LDD; and *Jon Feingersh Photography, Inc. v. Pearson Education, Inc.*, No. 11-cv-05122-AB.

C.     District of Arizona: *Tom Bean v. Pearson Education, Inc.,* No. 3:11-cv-08030-PGR; and *DRK Photo v. Pearson Education, Inc.,* No. 3:11-cv-08097-PGR.

D.     District of Colorado: *Viesti Associates, Inc. v. Pearson Education, Inc.,* No. 11-cv-01687-PAB; *Viesti Associates, Inc. v. Pearson Education, Inc.,* No. 12-cv-01431-PAB-DW; and *Viesti Associates, Inc. v. Pearson Education, Inc.* No. 12-cv-02240-PAB-DW.

E.     District of Hawaii: *Pacific Stock, Inc. v. Pearson Education, Inc.,* No. 11-cv-00423-SOM-BMK.

F.     Northern District of Ohio: *Penny Gentieu v Pearson Education, Inc.*, No. 3:11-cv-01946-JGC.

G.     District of Alaska: *Alaska Stock, LLC v. Pearson Education, Inc.*, No. 3:11-cv-00162 TMB.

H.     Northern District of California: *Carr Clifton v. Pearson Education, Inc.*, No. 5:11-cv-03640-EJD; *Minden Pictures, Inc. v. Pearson Education, Inc*., No. 3:11-cv-05385-WHA; and *Muench v. Pearson*, No. 4:2012-cv-01927 EJD.

I.     Northern District of Illinois: *Robert Frerck v. Pearson Education, Inc.*, No. 1:11-cv-05319.

J.       District of Maine: *StockFood America Inc. v. Pearson Education, Inc.* 2: 2012-cv-00124.

23.     In many of those suits, Pearson filed motions to dismiss based on the argument that infringement claims pleaded "upon information and belief" — necessary because Pearson, the sole source of information about its infringing uses, refuses to disclose its uses — must be dismissed as unsupported by evidence and that only infringements Pearson acknowledges before suit are actionable.  No court has granted such a motion.  Such motions have been denied in at least the following cases: *Norbert Wu v. Pearson Education, Inc.*, No. 09-cv-06557-RJH*Grant Heilman Photography Inc. v. Pearson Education, Inc.* (E.D. Pa. No. 5:11-cv-04649-LDD); *Jon Feingersh Photography, Inc. v. Pearson Education, Inc.* (E.D. Pa. No. 11-cv-05122-AB); *Tom Bean v. Pearson Education, Inc.* (D. Az. No. 3:11-cv-08030-PGR); *Robert Frerck v. Pearson Education, Inc.*, (N.D. Il. No. 1:11-cv-05319); *Pacific Stock, Inc. v. Pearson Education, Inc.* (D. Hawaii No. 11-cv-00423-SOM-BMK); *Alaska Stock, LLC v. Pearson Education, Inc.* (D. Alaska No. 3:11-cv-00162 TMB); *Carr Clifton v. Pearson Education, Inc.* (N.D. Cal. No. 5:11-cv-03640-EJD); and *Minden Pictures, Inc. v. Pearson Education, Inc.*, No. 3:11-cv-05385-WHA. To avoid another adverse ruling, Pearson withdrew its motion to dismiss in *Phil Degginger v. Pearson Education, Inc.* (E.D. Pa. No. 11-cv-01302-GKP).

24.     In the parallel case, *Minden Pictures, Inc. v. Pearson Education, Inc.*, No. 3:11-cv-05385-WHA, the court denied Pearson's motion to dismiss stating: "Minden alleged in its initial complaint in November 2011 that it had found 29 cases of copyright infringement by Pearson (Compl. ¶ 9). Four months later, it had already found over 100 new instances (Second Amd. Compl. ¶ 13). Pearson does not dispute that Minden's second amended complaint sufficiently alleges infringement as to these 132 images (Br. 14). Therefore, a reasonable

inference can be drawn that, through a pattern and practice of impermissible use and deception, Pearson has profited from the unauthorized distribution of more than just these 132 images."

25.    On May 3, 2010, and January 13, 2011, Julie Orr, Pearson's Curriculum Group's Image Manager, Rights and Permissions, testified that Pearson had published photographs in its textbooks in some instances without obtaining any permission and had printed in excess of license limits in situations where licenses were obtained.

26.    On June 16, 2010, Maureen Griffin, Pearson's Curriculum Group's Photo Commissions Editor, testified that Pearson had published photographs in its textbooks "before the FTP [file to printer] date" and that "the number of textbooks printed exceeded the licenses we obtained."

27.    Upon information and belief, Pearson exceeded the permitted uses under the terms of the limited licenses identified in Exhibit 1, as well as other as yet undisclosed licenses issued by Corbis or other agencies to Pearson for use of JFPI images.

28.    When Pearson copied, distributed and used the Photographs without authorization, Pearson had a duty in equity and good conscience to disclose those uses.  This is especially so because Pearson knew precisely when its use of the Photographs exceeded the applicable license limitations, or were used without any license, but JFPI had no such knowledge nor any reason to assume Pearson was being deceitful in the uses it was making of the Photographs.

29.    Upon information and belief, Pearson used the Photographs without any permission in additional publications.  Because Pearson alone knows these wholly unauthorized uses, JFPI cannot further identify them without discovery.  Upon information and belief, Pearson has developed a list of its wholly unlicensed uses (euphemistically referred to by Pearson as

images that need to be "cleared") and JFPI's Photographs are among those Pearson has so identified.

30.     Pearson alone knows the full extent to which it has infringed JFPI's copyrights by unauthorized uses of the Photographs.

31.     In this case, as it has in others without success, Pearson seeks judicially-conferred immunity for its widespread copyright infringements by its "commit-the-perfect-crime" approach:

> A.     License for unrealistically low limits, giving Pearson access to the Photographs and concealing its infringements because the licensor doesn't know if and when Pearson violates any particular license's limits.

> B.     Use beyond the authorized limits without notice.

> C.     Refuse to disclose its unauthorized uses when requested.

> D.     Argue in court that infringement claims pleaded "upon information and belief" — necessary because Pearson, the sole source of information about its infringing uses, refuses to disclose its uses — must be dismissed as unsupported by evidence and that only infringements Pearson publicly acknowledges before suit are actionable.

### *Contributory Copyright Infringement*

32.     Upon information and belief, Pearson facilitated the international distribution of its publications, in part, through its international rights management group ("IRMG") located in Indiana and New Jersey.  The IRMG website indicates that it is the IRMG's "mission to maximize the number of translations and local versions published that are based upon products of Pearson Education," and that the IRMG "arranges for approximately 4,000 third-party licenses annually, which includes translations in approximately 50 languages read around the world."

The IRMG website also indicates that its team "frequently travels to countries to visit with local publishing partners who are interested in obtaining foreign rights to our books."

33.     Upon information and belief, Pearson reproduced and distributed the Photographs without JFPI's permission to other entities, subsidiary companies, divisions, affiliates and/or third parties ("Third Parties").   Upon information and belief, Pearson's unauthorized reproduction and distribution to the Third Parties took place in the United States.

34.     Upon information and belief, the Third Parties then translated the publications at issue into additional languages or published them in local adaptations or reprints and included the Photographs in these publications without JFPI's permission.   By transmitting the Photographs to the Third Parties, Pearson enabled, induced, caused, facilitated, or materially contributed to the Third Parties' unauthorized reproduction and distribution of the Photographs.

35.     Upon information and belief, Pearson permitted Third Parties to distribute Pearson's publications containing the Photographs in new territories, to translate its publications into new languages, and to adapt its publications for distribution in additional territories.

36.     Upon information and belief, Pearson knew when it reproduced and distributed the Photographs that the Third Parties would reproduce and distribute the Photographs without Plaintiff's authorization.

37.     Upon information and belief, Pearson knew that the Third Parties were reproducing and distributing Plaintiff's Photographs without authorization.

38.     Upon information and belief, Pearson directly profited from its transmission of the Photographs to the Third Parties since such Third Parties paid Pearson for translation rights, including access to all of the content in the publications.

*Breach of Contract*

39.     The royalty statements JFPI received from TSM, Zefa, and Corbis typically included the invoice number and date, the licensor name, the image ID and description, a code for the type of use (*i.e.*, "BOOK" or "ADMAG"), the customer (licensee) name, and the royalty calculation.  The statements do not include license terms or the specific limits on how the customer may use the photographs such as number of copies, distribution area, image size, language, duration and/or media (print or electronic).  The statements also usually do not state the title of the publication in which JFPI's photographs will appear, or otherwise specify what use the licensor will make of JFPI's photographs.

40.     JFPI cannot investigate most potential copyright infringements without this information contained in the licenses these agencies issued.

41.     Upon information and belief, Corbis has decided not to pursue copyright infringement claims against textbook publishers in order to maintain its business relationship with them.

42.     Upon information and belief, Corbis is putting textbook publishers and other customers' interests ahead of the interests of its contributing photographers, including JFPI.

43.     Upon information and belief, Corbis has granted and continues to grant licenses to textbook publishers with the knowledge that the limits in the licenses would be exceeded.

44.     JFPI's contracts with TSM and Zefa, which Corbis assumed, implied a duty that Corbis would not frustrate JFPI in bringing copyright infringement claims in his own name.

45.     The parties' contract implied a duty that Corbis would not issue licenses knowing that the customer would infringe JFPI's copyrights by exceeding the license limits.

46.     Corbis, by its refusal to either (a) bring copyright infringement claims against publishers including Pearson or (b) provide JFPI with the information necessary to pursue those claims himself, is depriving JFPI of the benefits of the contracts.

47.     Corbis is also depriving JFPI of the benefits of the contract by issuing licenses with the knowledge that the limits will be exceeded.

48.     All exhibits attached hereto are incorporated into this complaint by this reference.


## COUNT I

## COPYRIGHT INFRINGEMENT AGAINST PEARSON

49.     JFPI incorporates herein by reference each and every allegation contained in the paragraphs set forth above.

50.     The foregoing acts of Pearson constitute direct, contributory and/or vicarious infringements of JFPI's copyrights in the Photographs in violation of 17 U.S.C. §§ 501 *et seq.*

51.     Plaintiff suffered damages as a result of Pearson's unauthorized use of the Photographs.


## COUNT II

## CONTRIBUTORY COPYRIGHT INFRINGEMENT AGAINST PEARSON

52.     JFPI incorporates herein by this reference each and every allegation contained in the paragraphs set forth above.

53.     The foregoing acts of Pearson constitute contributory infringement of JFPI's copyrights in the Photographs in violation of 17 U.S.C. §§ 501 *et seq.*

54.     JFPI suffered damages as a result of the unauthorized use of the Photographs.

## COUNT III

### BREACH OF CONTRACT AGAINST CORBIS

55.     JFPI incorporates herein by reference each and every allegation contained in the paragraphs set forth above.

56.     The TSM Agreement was a binding and enforceable contract between TSM and JFPI.

57.     The Zefa Agreement was a binding and enforceable contract between Zefa and JFPI.

58.     JFPI performed all of its obligations under the Zefa and TSM Agreements.

59.     When Corbis acquired TSM and Zefa, it assumed TSM and Zefa's rights and obligations under the TSM and Zefa Agreements.

60.     Pursuant to the terms of the TSM and Zefa Agreements, JFPI has a right to inspect TSM and Zefa's (and now Corbis's) books and records.

61.     Corbis's refusal to produce records reflecting the terms of the licenses it issued to Pearson for JFPI's Photographs constitutes a breach of the TSM and Zefa Agreements.

62.     JFPI was harmed by Corbis's failure allow inspection of its records as provided in the Agreements.

## COUNT IV

### BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING AGAINST CORBIS

63.     JFPI incorporates herein by reference each and every allegation contained in the paragraphs set forth above.

64.     The Agreements impose upon both parties a duty of good faith and fair dealing.

13

65.     Notwithstanding Corbis's duty of good faith and fair dealing, Corbis acted unreasonably and against JFPI's justified expectations when it entered into licenses that it knew would be infringed and when it did nothing to redress licenses that it knew to be infringed.

66.     Plaintiff was harmed as a result of Corbis's failure to act in good faith and conduct its dealings fairly.

WHEREFORE, Plaintiff requests the following:

1.     A permanent injunction against Defendants and anyone working in concert with them from copying, displaying, distributing, selling or offering to sell Plaintiff's Photographs described in this Complaint and Plaintiff's photographs not included in suit;

2.     As permitted under 17 U.S.C. § 503, impoundment of all copies of Plaintiff's Photographs used in violation of Plaintiff's exclusive copyrights as well as all related records and documents and, at final judgment, destruction or other reasonable disposition of the unlawfully used Photographs, including digital files and any other means by which they could be used again by Defendants without Plaintiff's authorization;

3.     An award of Plaintiff's actual damages and all profits derived from the unauthorized use of Plaintiff's Photographs;

4.     An award of actual damages incurred by JFPI as a result of Corbis' breach of contract and duty of good faith and fair dealing;

5.     An award of Plaintiff's reasonable attorneys' fees;

6.     An award of Plaintiff's court costs, expert witness fees, interest and all other amounts authorized under law;

7.     Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues permitted by law.


DATED:  January 7, 2013


Plaintiff Jon Feingersh Photography, Inc., by its attorneys,

s/ Maurice Harmon

Maurice Harmon
Harmon & Seidman, LLC
11 Chestnut Street
New Hope, PA 18938
Tel. (917) 561-4434
maurice@harmonseidman.com